HARVEY BROTHERS, Plaintiff and Appellee, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7662. Argued April 26, 1939.—Decided March 8, 1940.

George A. Malcolm, Attorney General, and M. Rodríguez Ramos, Assistant Attorney General, for appellant. Alfonso Miranda Esteve for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The plaintiff partnership claims in four distinct and separate causes of action the refund of certain sums paid under protest by said partnership to the Treasurer of Puerto Rico as income tax for the years 1928, 1929, 1930 and 1931.

It is alleged in the first cause of action that the Treasurer assessed the net income of the plaintiff for 1928 at $12,572.43, and the tax thereon at $1,571.55; that the plaintiff paid the amount of said tax, besides $651.04 as interest thereon, or a total of $2,222.59; that the collection of such sum is wrong, excessive and unlawful, for the following reasons:

(a) Because the defendant did not accept the loss of $26,000 which the plaintiff alleges to have suffered in its coconut plantations as the result of the cyclone of September 13, 1928; that he refused to accept the reduction of $6,000 from the gross income for 1928, allowed it by the Board of Review and Equalization by reason of such loss.

(b) Because the defendant has allowed the plaintiff only $850 as anual deduction for each of the years from 1928 to 1931 by reason of the depreciation of its cattle, equivalent to 16⅔ per cent on $5,100 at which the cattle was erroneously assessed, although it was entitled to an anual deduction of 1,715.60, equivalent to 16⅔ per cent on $10,300 as the assessed value of its cattle.

(c) That even accepting the sum of $12,572.43 as the actual net income of the plaintiff, the latter would be entitled "to a deduction from its gross income of $5,000, allowed under section 34 of Act No. 74, (Session Laws of 1925), as section 6 of Act No. 18, (Session Laws of 1927), is unconstitutional and therefore void and null.

(*d*) That even assuming that the plaintiff were not entitled to a $26,000 deduction for damages suffered by its coconut plantations, and that Act No. 18 of 1927, *supra,* were constitutional, if from the $12,572.43 assessed by the Treasurer as the net income for 1928, there should be deducted the sum of $6,000 allowed by the Board as deduction on account of damages to the coconut plantations, the taxable income would turn out to be less than $10,000, which would entitle the plaintiff to a specific credit of $3,000 as allowed by section 34 of Act No. 18 of 1927, *supra.*''

The plaintiff claims the refund of $2,222.59 paid under protest.

Similar allegations are made in the other three causes of action and the plaintiff claims, respectively, $360.62 collected upon an alleged net income amounting to $2,138.39; $171.53 on a net income of $1,068.19 in 1930; and $953.78 on an alleged net income amounting to $6,253.58 in 1931.

The answer of the defendant covers 23 pages. For greater brevity we will transcribe a summary of his allegations made by the court below, as follows:

''The answer of the Treasurer, which is rather long, accepts the facts generally but denies, as to the first cause of action, that the plaintiff had suffered losses in its coconut plantation, and that the reasonable value of such losses amounted to $26,000, or that he had rejected such deduction, and alleges, on the contrary, that the plaintiff filed in the Treasury Department its income tax return in which it claimed a $5,000 deduction on its gross income on account of losses for the coconut crop of 1928 as the result of the cyclone of September 13; that the then Treasurer struck out the item claimed as the same did not constitute a deductible loss but an income which the plaintiff failed to receive; that the plaintiff did not appeal to the Board of Review and Equalization from his decision of the Treasurer but consented to it; that while the case was before the Board pending appeal the plaintiff claimed for the first time a $26,000 reduction upon the ground that said sum was the reasonable value of 5,300 coconut palms destroyed by the cyclone of September 13, 1928; that the Board of Review and Equalization accepted a $6,600 deduction from the gross income as the loss of coconut palms destroyed by the cyclone, and that the then Treasurer did not acquiesce in the decision of the Board, 'as the same was illegal, void and of

no effect in law, for it was rendered by the Board acting without jurisdiction, because said claim was originally filed with the Board and not with Manuel V. Domenech, Treasurer of Puerto Rico, and was presented in a petition for reconsideration filed with the said body and not in the office of the Treasurer of Puerto Rico, all of which in violation of section 76(b) of the Income Tax Act.'

''As to the deduction from the gross income of the amount of the depreciation of the cattle, the Treasurer denies that the said cattle of the plaintiff was worth $10,300, or that it was entitled to a $1,715.60 deduction and, on the contrary, alleges that in 1928 the plaintiff did not keep account books of any sort that might reflect the value of its cattle; he likewise denies that the sum of $10,300 represents the assessed value for the purpose of taxation of the 52 cows which the plaintiff had in its dairy business and alleges that the sum of $850 allowed as depreciation of the cattle was computed on the basis of the assessed value of said cattle less the estimated value of the same at the expiration of its period of usefulness.

''As to the deduction on account of credits allowed under section 34(b) of the 1925 Act, the Treasurer alleges that, if deduction was made of the $6,600 allowed by the Board of Review and Equalization, the net taxable income of the plaintiff would be less than $10,000 and it would be entitled to the specific credit of $3,000 allowed under the aforesaid section of the Income Tax Act; but as the decision of the Board was rendered without jurisdiction, as above alleged, no credit whatever could be granted or deducted.

''The other denials of the answer refer to this same proposition, and as special defenses it is alleged: 1, that as the plaintiff has failed to claim either in his income tax return or in its appeal to the Board the losses suffered by it in its business for 1928, it has neither right nor cause of action to claim any deduction on this account, inasmuch as it failed to exhaust the administrative remedies before having recourse to the courts; and, 2, that for the above reasons the plaintiff is estopped from bringing this claim to the courts and the latter are likewise estopped from taking cognizance thereof or from allowing or refusing the same for want of jurisdiction.''

The District Court of San Juan gave judgment for the plaintiff and ordered that it be reimbursed for any sums wrongly collected from it, with interest thereon, and costs but no attorney's fees. The appellant treasurer assigns five

errors as committed by the trial court which we shall proceed to set forth and discuss in the order of their assignment.

 It was error to hold that the plaintiff was entitled to the $6,600 deduction allowed it by the Board of Review and Equalization by reason of the alleged destruction of coconut palms.

In its income tax return filed for 1928 the plaintiff applied for a $5,000 deduction *for losses incurred in the coconut crop caused by the cyclone* which occurred in that same year. The Treasurer refused to allow the deduction. The plaintiff appealed to the Board of Review and Equalization and there claimed a $26,000 deduction *on account of the loss of the value of the coconut palms destroyed by the cyclone* of San Felipe in 1928. The board allowed a $6,600 deduction. The Treasurer refused to accept said deduction on the ground that the board proceeded without jurisdiction in allowing the same.

There is no question as to the losses suffered by the plaintiff. It appears from the evidence that the cyclone destroyed 5,300 coconut palms worth $5 each and amounting in all to $26,500.

The appellant raises in his brief two questions as follows:

(*a*) That the Board can not originally take cognizance of any matter relating to the assessment of income tax unless the same has been first considered and determined by the Trasurer of Puerto Rico.

(*b*) That the district court can not take cognizance of any question that has not been submitted to the Treasurer by including the same in the income tax return for his consideration as one of the grounds for the appeal.

In support of his contention appellant cites the decisions in *Ríos v. Richardson,* 24 P.R.R. 513, and in *P. R. Fertilizer Co. v. Domenech,* 49 P.R.R. 43.

It was held in the first of the above two cases that a taxpayer who has paid the amount of his taxes under protest can not have recourse to the courts for the refund of the sums so paid if it appears that the Board of Review and

Equalization had jurisdiction to review the assessment and it was not shown that an administrative appeal had been taken to said board.

In the second of the cases cited, the Porto Rico Fertilizer Co., as the withholding agent of a United States corporation, paid without protest income taxes which were collected from it by the Treasurer. Afterwards, it applied to the Treasurer for the refund of the sums paid on the ground that the same had been wrongly collected. The Treasurer refused to refund them and the taxpayer then sued the Treasurer in the District Court of San Juan. The court sustained a demurrer for insufficiency and stated that it could not order the refund because the payments had not been made under protest and because the taxpayer should have appealed from the refusal of the Treasurer to the Board of Review and Equalization before it was entitled to have recourse to the courts. The taxpayer appealed to this court and alleged that it was not its duty to pay under protest or to appeal to the said board. This court, construing subdivisions (*a*) and (*b*) of sections 75 and 76 of Act No. 74, (Session Laws of 1925), dealing with income tax, held as follows:

"Subdivision (*a*) of section 76 of the same act, under the heading of 'Limitations upon suits and proceedings by the taxpayer,' provides that the decisions of the Board of Review and Equalization shall be final without prejudice to a reconsideration pursuant an law, and that the taxpayer shall pay under protest such tax as shall have been levied on him within the time specified, and within 30 days subsequent to such payment under protest he may bring proper suit in a proper court, against the Treasurer of Puerto Rico. Said period of 30 days was extended by Act No. 8 of 1927, to one year. Subdivision (*b*) of the said section 76 provides that no suit or proceeding shall be maintained in any court for the recovery of any income tax or excess-profits tax alleged to have been erroneously or illegally assessed or collected, or of any pecuniary penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Treasurer and with the Board of Review and Equalization on appeal, according to the pro-

visions of the law in that regard, and the regulations established in pursuance thereof. The effect of said provisions is that the income tax must be paid under protest in order that its refund may be claimed, and suit must be brought within one year, but that said proceeding shall not be maintained by the court unless the payment was made under protest and a claim for refund has been duly filed with the Treasuer and with the Board of Review and Equalization on appeal, on or before said year. We have already stated that in the instant case payment was not made under protest, as it should have been done.

"On the other hand, it was a prerequisite that the taxpayer should have appealed to the Board of Review and Equalization from the decision of the Treasurer denying the refund claimed. The language of the statute is sufficiently clear to conclude that an appeal to the board was authorized. Such an appeal was not taken."

In the case at bar there was an assessment of taxes by the Treasurer, an appeal to the Board and a payment under protest, before the suit was brought in the lower court. We fail to see that the decisions in the two cases cited are applicable.

The answer to the first question raised by the appellant, i.e., whether the Board has power to take cognizance of a question which has not been first considered and determined by the Treasurer, is found in the text of the act creating the Board of Review and Equalization and defining its powers and duties. Sections 308 and 310 of the Political Code, as amended by Act No. 75, approved August 2, 1923, (Sess. Laws of 1923), in their pertinent part read as follows:

"Section 308.—For the purpose of revising the assessment and reassessment of real and personal property as provided by this Title, *and for the purpose of passing on all claims made by taxpayers in respect to* the assessment of their properties and the *levying of* property and *income taxes,* there shall be in the Department of Finance a permanent Board of Review and Equalization etc. . . . . .

"Section 310.—Said Board of Review and Equalization shall meet in regular session in the months of January, May and September of each year, and in special session at such other times as may be neces-

sary in the opinion of the chairman. At said meetings the board shall hear appeals received and shall decide questions arising before the board relative to the greater or lesser amount at which proprty may be assessed for purposes of taxation, *or to fix the income tax of any taxpayer;* and upon recording such determination, the board shall correct returns, and liquidate taxes to be levied on income returns filed, in accordance with its decision, and shall report the facts to the Department of Finance for such corrections, cancellations or issuance of receipts as may be proper. *Said board shall have power to strike out, lessen or increase the valuations made in any schedule returned to it, whether or not complaint has been made in connection therewith,* and to decide all other complaints in regard to the levying of property and income taxes, *and to correct all errors as such errors are brought to its attention.''* (Italics ours.)

In the case at bar, the taxpayer claimed a $5,000 deduction on account of the loss of the coconut crop. Upon refusal by the Treasurer, the taxpayer appealed to the board, calling attention to the fact that the Treasurer failed to take into consideration that the said taxpayer suffered big losses from the destruction of the coconut palms. The board proceeded to consider and determine the question raised, namely, whether or not the taxpayer was entitled to any deduction by reason of the losses caused by the San Felipe cyclone. The powers conferred by the statute on the Board are clear and wide. When an income tax return is sent to the Board for review, on appeal from a decision of the Treasurer, the Board has power to strike out, increase or diminish any valuations made by the Treasurer, without it being an essential requisite that a specific claim should have been filed in connection therewith. The spirit of the act is to open the case anew before the Board, so as to enable the latter to make a wide and careful investigation of all the questions submitted to it and to render a decision equitable to both sides, for the protection of the taxpayer from unlawful exaction by the Treasury, and of the Treasury from concealment of taxable income on the part of the taxpayer.

We will not go as far as to say that a taxpayer may claim for the first time before the Board a deduction entirely new, regarding which nothing was said by him to the Treasurer. However, if, as happens in the instant case, the petition filed with the Treasurer and that filed with the Board are, if not identical, germane, because both refer to losses resulting from the same cause, the San Felipe cyclone, and in the same business, it is our opinion that the Board of Review and Equalization has power and jurisdiction to take cognizance of the case.

■■ That it was error for the lower court to find that the Board erred in allowing the plaintiff a deduction for depreciation amounting to $50 assessed upon $5,100 as the value of the cattle; and in holding, moreover, that the deduction for depreciation of said cattle should have been assessed upon a valuation of $10,300.

It appears from the 1928 income tax return of the plaintiff (Exhibit 1 of the defendant), that said plaintiff claimed a $4,200 deduction on account of the depreciated value of 75 milk cows, 2 bulls and 3 horses.

It appears from the 1927–28 income tax return (Exhibit 19 of the defendant), relied upon by the Treasurer for assessing the property tax against the plaintiff for the fiscal year 1927–28 and that was in force until the year 1932–33, that the plaintiff owned 52 cows valued at $10,300.

As the Treasurer refused to allow the deduction sought by reason of the depreciation of the cattle, on September 10, 1934, the plaintiff appealed to the Board of Review and Equalization. In its notice of the appeal (Exhibit 8 of the defendant) filed with the board, it is alleged that in granting the deduction to which the plaintiff is entitled on account of depreciation no amount whatever was allowed to the plaintiff by reason of the depreciation of its cattle.

After considering the matter, the Board decided to accept as deduction from the gross income the sum of $850 for each of the four years from 1928 to 1931, "representing a depreciation of 16⅔% on $5,100, the assessed value of the cattle."

(Exhibit 9 of the defendant.) The lower court in deciding this point expressed itself as follows:

"As to the valuation of the cattle, the evidence for the Treasurer (see exhibit 19, which is the property tax return for the year 1927–28) includes as the property of the plaintiff and under the heading cattle, 52 cows appraised by the taxpayer at $10,300, which valuation was accepted by the Treasurer. If the latter levied a property tax taking as a basis its valuation as set forth in its return by the taxpayer, the Treasurer can not afterwards reduce such valuation, unless 'there is a showing of fraud or that said property had been assessed at an excessive sum for the purpose of affecting a subsequent taxation. It is well known that the greater the assessment the larger the taxation. In the instant case no allegation of fraud appears and still less any evidence that such fraud was committed. In our opinion the Treasurer can not go against his own acts and the valuation of chattels accepted by him can not afterwards be capriciously reduced by him, because it is a general rule that the assessment and determination of taxes rests on actual facts but not on theories, technicalities, entries on account books, or on mere conjectures. *Loíza Sugar Co.* v. *Domenech*, 44 P.R.R. 536. If the cows were worth $10,300 and 16⅔% thereon was granted as depreciation, this latter rate should have served as a standard for the deduction allowed by the Board. There is no justification for the reduction. The error seems to us manifest and should be corrected in order to meet out full justice."

We agree with the lower court on its conclusions, which are sustained by the evidence.

■ That it was error for the trial court to declare void as unconstitutional section 6 of Act No. 18 of 1927; and to conclude that section 34(*b*) of Act No. 74 of 1925 should be applied in the instant case, and that a $5,000 credit should be allowed to the plaintiff.

If there is deducted from the gross income of the plaintiff partnership the amount of the deductions allowed it by the lower court, the net taxable income turns out to be less than $10,000.

Section 34 (*b*) of Act No. 74 of 1925 read, before the same was amended, as follows:

"Section 34.—For the purpose only of the tax imposed by section 28 there shall be allowed the following credits:

"* * * * * * *

"(b) In the case of a domestic partnership or corporation the net income of which does not exceed twenty-five thousand (25,000) dollars, a specific credit of $5,000, and in other cases a specific credit of $4,000."

Section 6 of Act No. 18 of June 3, 1927, amended section 34 (b), supra, as follows:

"In the case of a domestic partnership or corporation the net income of which does not exceed ten thousand (10,000) dollars, a specific credit of three thousand (3,000) dollars. In cases where the net income exceeds ten thousand (10,000) dollars no credit shall be allowed. Foreign corporations or partnerships although having an office or business place in Porto Rico) are not entitled to the three-thousand (3,000) dollars credit allowed domestic corporations and partnerships."

The point to be determined is whether the credit claimed by the plaintiff must be computed under Act No. 74 of 1925 or in accordance with the subsequent Act No. 18 of 1927.

The lower court, relying on its own decision in the case of Francisco López Salgado, civil No. 16334, decided in May 1934, held that section 6 of Act No. 18 of June, 1927, is null as unconstitutional and, therefore, that the law applicable in the premises is the former Act of 1925.

This same question was considered and decided by this court in *F. Febles y Cia.* v. *Sancho Bonet, Treas.,* 50 P.R.R. 742, and in *J. M. Blanco* v. *Treasurer,* 55 P.R.R. 380, in which it was held that subdivision (b) of section 34 of Act No. 74 of 1925, as amended by Act No. 18 of 1927, is unconstitutional only in so far as the same fails to allow any credit in cases where the net income exceeds $10,000, and, therefore, the $3,000 credit allowed by the statute to taxpayers whose income does not exceed $10,000 shall also be allowed to taxpayers whose income exceeds such sum. In accordance with the decisions in the above cases it was error for the lower

court to hold that the plaintiff herein is entitled to a $5,000 credit whereas he is only entitled to a $3,000 credit.

■ In the above cases it was also held that the question regarding the constitutionality of the statute by virtue of which the tax paid under protest is collected may be raised and determined on appeal even though the same had not been raised in the Board of Review and Equalization.

The overruling of the three assignments discussed by us must result in the overruling of the last two. The lower court rightly ordered a reassessment of the income taxes due by the plaintiff and rightly taxed the costs against the defendant.

For the foregoing reasons the judgment appealed from must be modified so as to allow the plaintiff a specific credit of $3,000 and then affirmed.